UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

PATRICIA LAHOUD and      :
JOSEPH LAHOUD,           :
          Plaintiffs,    :
                         :
                         :
          v.             :    No. 3:07CV01616 (DJS)
                         :
COUNTRYWIDE BANK FSB and  :
RUSSELL BOON RHEA d/b/a   :
ALL MORTGAGE SERVICES,    :
          Defendants.     :


MEMORANDUM OF DECISION AND ORDER

The plaintiffs, Patricia and Joseph Lahoud ("the Lahouds"), bring this action against the defendants, Countrywide Bank FSB ("Countrywide") and Russell Boon Rhea d/b/a All Mortgage Services ("Rhea"), alleging violations of both the federal and Connecticut Truth In Lending Acts ("TILA"), fraudulent inducement, violation of the Connecticut Unfair Trade Practices Act, violation of the Equal Credit Opportunity Act ("ECOA"), and violation of the Fair Credit Reporting Act ("FCRA"). Now at bar is Countrywide's motion for partial summary judgment pursuant to Fed. R. Civ. P. 56 as to the following claims against Countrywide: the TILA claims (Count One of the complaint), the ECOA claim (Count Four of the complaint), and the FCRA claim (Count Six of the complaint).[1]  For the reasons that hereafter

_____

[1] Countrywide's motion does not pertain to, and this decision does not address, any of the claims made by the Lahouds against the defendant Rhea.

follow, Countrywide's motion for partial summary judgment (dkt. # 80) is GRANTED in part and DENIED in part.

I.   FACTS

The following facts are undisputed unless otherwise indicated. In May of 2006, the Lahouds engaged defendant Rhea in their search for a new Home Equity Line of Credit ("HELOC") to replace an existing HELOC on their home. The Lahouds, through Rhea, applied for both a first mortgage and a second HELOC from Countrywide. It was the Lahouds' understanding that Rhea's firm, All Mortgage Services, was Countrywide's business partner and that it was representing Countrywide for purposes of the mortgage application.

On or about October 12, 2006, Rhea sent a written communication to Countrywide which indicated, among other things, a "program change . . . no simultaneous 2nd . . . ." (Dkt. # 80-6, at 2.)   That same day Rhea sent another written communication to Countrywide which stated, in part, as follows: "stand alone 2nd follows. (will close > 1st)" (*Id.* at 4.) According to an October 16, 2006 email from Countrywide Account Executive Anthony Bruschi, "[t]o get better pricing we need to have the first loan fund . . . then the second loan close the day after. I know this sounds weird . . . but we cannot have both files in at the same time in the system and do it that way with the company. . . . We can underwrite [the second loan] and

close it in one day, but it has to be the day after the [first] loan funds." (Dkt. # 90-3, at 29.)

The closing of the first mortgage was originally planned for November 24, 2006, but was postponed until November 28, 2006. All documents at the closing, including the TILA disclosures, were dated November 24, 2006. Rhea advised the Lahouds on November 28, 2006 that the HELOC had been approved but that it would not close until after the first mortgage had closed.

On December 4, 2006, Countrywide sent Rhea a "Withdrawal Letter" addressed to the Lahouds which stated that "[t]his letter confirms that you recently withdrew your application for a mortgage loan with AMERICA'S WHOLESALE LENDER . . . . If you did not intend for your application to be withdrawn, please contact us as soon as possible so we can move forward on completing your loan request."(Dkt. # 80-6, at 14.) It is at this point that the narratives of the parties diverge. The Lahouds contend that "[a]t no time did [they] withdraw [their] application for a home equity line of credit." (Dkt. # 90-3, at 31.)  The Lahouds further allege that at some point in December of 2006 Rhea was informed that Countrywide was about to deny the HELOC application because of a drop in the Lahouds' credit scores. The Lahouds believed that the scores had dropped due to erroneous reporting. Rhea requested that Countrywide delay acting on the application in order to provide time for credit

repair. By January 2007 the Lahouds' credit scores had improved and Countrywide then requested that Rhea secure a current confirmation of the Lahouds' assets. By that time, balances in the Lahouds' accounts had been reduced, and this confirmation could not be provided. Rhea then orally informed the Lahouds that Countrywide would not approve the HELOC.

Alternatively, Countrywide claims that Rhea had advised Countrywide on or about December 4, 2006 that the Lahouds had decided against obtaining a new HELOC loan and requested that their application be withdrawn. At this time, Countrywide sent Rhea the "Withdrawal Letter" addressed to the Lahouds. Because the Court must "view[] the record in the light most favorable to the party against whom summary judgment is sought," In re Novartis Wage & Hour Litigation, 611 F.3d 141, 150 (2d Cir. 2010), the Court accepts as true the facts presented by the Plaintiffs for purposes of determining the pending motion.

On or about June 1, 2007, Countrywide employee Bill Gentz sent Patricia Lahoud a letter indicating that "[t]he 2nd [the HELOC] had to be removed from this transaction because you did not qualify," and that Mr. Gentz had "reviewed all loan documentation, all emails and all communication logs and there doesn't appear to be anything suggesting that a 2nd could be

processed once the first closed."[2] (Dkt. # 90-3, at 39.) On November 2, 2007, the Lahouds filed this action in the United States District Court for the District of Connecticut, seeking rescission of the Countrywide first mortgage, statutory damages, actual damages, punitive damages, and attorney's fees.

## II. DISCUSSION

The Lahouds have withdrawn the Sixth Count of their Complaint, brought under the FCRA, "and do not oppose the motion with respect to that claim." (Dkt. # 90, at 1 n. 1) Therefore, as to the FCRA claim Countrywide's motion for summary judgment is granted.

As to the ECOA and TILA claims, Countrywide argues that there are no material facts in dispute and that it is entitled to judgment as a matter of law. The Lahouds argue that the Court has been provided with sufficient evidence showing that there are material facts genuinely in dispute as to both claims. The Court shall address the ECOA and TILA claims separately below.

### A. SUMMARY JUDGMENT STANDARD

Fed. R. Civ. P. 56 (a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Thus, on a motion for summary judgment, the Court must "determine whether, as to any

---

[2] The Court notes that this statement appears to be in direct contradiction to the October 16, 2006 email from Mr. Bruschi (Dkt. # 90-3, at 29.)

material issue, a genuine factual dispute exists." <u>Kaytor v.</u>
<u>Electric Boat Corp</u>., 609 F.3d 537, 545 (2d Cir. 2010). A fact is
"material" if it "might affect the outcome of the suit under the
governing law," and a dispute as to a material fact is "genuine"
if "the evidence is such that a reasonable jury could return a
verdict for the nonmoving party." <u>Anderson v. Liberty Lobby,</u>
<u>Inc.</u>, 477 U.S. 242, 248 (1986).

In making this determination, "the court should review all
of the evidence in the record. In doing so, however, the court
must draw all reasonable inferences in favor of the nonmoving
party, and it may not make credibility determinations or weigh
the evidence." <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530
U.S. 133, 150 (2000).


## B. THE ECOA CLAIM

The Lahouds allege that Countrywide violated their rights
under ECOA.  Specifically, they allege a violation of 15 U.S.C.
§1691(d), which requires that "(1) Within thirty days . . .
after receipt of a completed application for credit, a creditor
shall notify the applicant of its action on the application" and
"(2) Each applicant against whom adverse action is taken shall
be entitled to a statement of reasons for such action from the
creditor." An "adverse action" is defined as "a denial or
revocation of credit, a change in the terms of an existing

credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested." 15 U.S.C. §1691(d)(6).

Countrywide does not address whether there was an adverse action or if any notice of such was sufficient, but argues instead that "[t]he Lahouds expressly withdrew their request for a HELOC and, as a result, Countrywide was not required to comply with the notification requirements of ECOA." (Dkt. # 80-2, at 12.) Pursuant to the mandate of 15 U.S.C. § 1691b(a)[3], the Governors of the Federal Reserve System[4] promulgated 12 C.F.R. 202, known as "Regulation B," to carry out the purposes of the ECOA. The Official Staff Interpretations of Regulation B state that "[w]hen an applicant expressly withdraws a credit application, the creditor is not required to comply with the notification requirements under § 202.9." 12 C.F.R. Part 202 Supplement 1, Official Staff Interpretations, Section 202.9-Notifications, 2.

Countrywide supports its contention that the Lahouds expressly withdrew the HELOC application by pointing to the December 4, 2006 "Withdrawal Letter" and to an entry in a "Loan Comments Log" maintained by Countrywide as to a "HELOC - Piggyback" for

---

[3] "The Bureau [of Consumer Financial Protection] shall prescribe regulations to carry out the purposes of this title [15 U.S.C. §§ 1691 et seq.]." 15 U.S.C. § 1691b (a).
[4] Pursuant to 12 U.S.C. § 5581, all "consumer financial protection functions" of the Board of Governors of the Federal Reserve System were transferred to the Bureau of Consumer Financial Protection.

the borrower Patricia Lahoud. The Loan Comments Log's last entry reads "per BP borrower decided against closing a new HELOC loan – withdrawn before approved." (Dkt. # 80-6, at 12.) Furthermore, the Withdrawal Letter states that "[i]f you did not intend for your application to be withdrawn, please contact us as soon as possible so we can move forward on completing your loan request." (Dkt. # 80-6, at 14.)   Thus, Countrywide contends, the application was expressly withdrawn, which was confirmed by Countrywide's Withdrawal Letter and the subsequent lack of response from the Lahouds.

The Lahouds dispute that the HELOC was ever withdrawn.   In support of this contention, they cite the deposition testimony of Rhea, the depositions of various Countrywide employees, and the affidavit of Joseph Lahoud. The narratives of both Rhea and the Lahouds differ from Countrywide's in that Rhea and the Lahouds contend that the December 2006 action on the HELOC application was intended to be a suspension of the application until credit repair could be undertaken and that at no time was the HELOC application actually withdrawn. In his affidavit, Mr. Lahoud states that "[a]t no time did Patricia Lahoud or I withdraw our application for a home equity line of credit." (Dkt. # 90-3, at 31, ¶ 8.) The Lahouds also rely on statements made by Countrywide employees Jennifer Corcoran and Pat Gossard, as well as the June 1, 20017 letter from Bill Gentz. Each of

these Countrywide employees concluded that the Lahouds did not qualify for the HELOC loan.

Having carefully reviewed all of the evidence in the record, the Court concludes that there is a material fact genuinely in dispute as to the ECOA claim, namely whether the Lahouds expressly withdrew their HELOC application, thereby relieving Countrywide of its notification obligations under ECOA.

Countrywide also contends that even assuming arguendo that it was required to comply with the notification provisions of ECOA, its actions were in good faith compliance with the Official Staff Interpretation of Regulation B and thereby entitled to the safe harbor protection afforded by 15 U.S.C. §1691e(e), which provides that:

> No provision of this subchapter imposing liability shall apply to any act done or omitted in good faith in conformity with any official rule, regulation, or interpretation thereof by the Bureau or in conformity with any interpretation or approval by an official or employee of the Bureau of Consumer Financial Protection duly authorized by the Bureau to issue such interpretations or approvals under such procedures as the Bureau may prescribe therefore, notwithstanding that after such act or omission has occurred, such rule, regulation, interpretation, or approval is amended, rescinded, or determined by judicial or other authority to be invalid for any reason.

Countrywide argues that its "actions with respect to the Lahouds' withdrawal of their request for a HELOC, including its issuance of the Withdrawal Letter, were clearly in compliance

9

with the Official Staff Interpretation relating to withdrawn applications." (Dkt. # 80-2, at 15.) Since this argument is based on the premise that the Lahouds had withdrawn their request for a HELOC, and since the Court has already concluded that there is a material fact genuinely in dispute as to whether the Lahouds expressly withdrew their HELOC application, Countrywide is not entitled to summary judgment as to the ECOA claim on the basis of the safe harbor provisions of 15 U.S.C. §1691e(e). Because there is a material fact genuinely in dispute as to the ECOA claim against Countrywide (Count Four of the complaint), Countrywide's motion for summary judgment is denied as to that claim.

## C. THE TILA CLAIMS

The Lahouds contend that Countrywide violated various provisions of TILA[5]. The complaint alleges that these violations included failing to properly disclose the amount financed, the finance charge, and the annual percentage rate (collectively, the "finance charge disclosures"), all of which the Lahouds contend were incorrectly disclosed on the TILA Disclosure Notices. The Lahouds also claim that the three day right of

---

[5] Although the plaintiffs' complaint alleges violations of both the federal and Connecticut TILAs, both parties address the TILA claims in terms of the federal act. The Court does not find this circumstance problematic "[b]ecause the federal and Connecticut TILAs are generally coextensive . . . ." Bank of New York v Conway, 50 Conn. Supp. 189, 197 (2006).

rescission was improperly disclosed, as the transaction date listed on the notice was November 24, 2006, and they did not receive the notice until November 28, 2006, the actual date of the closing.

Countrywide contends that the Lahouds' TILA claims regarding the finance charge disclosures are baseless. Specifically, they offer an expert report indicating that the amount financed, the finance charge, and the annual percentage rate were all properly disclosed. Countrywide further contends that the Lahouds' claim of a TILA violation based on the improper disclosure of the three day right of rescission is improperly raised and that Countrywide was not on notice of such claim until the Lahouds filed their memorandum in opposition to the motion at bar. Alternatively, Countrywide contends that it was in full compliance with "Regulation Z," 12 C.F.R. pt. 226, and that the right of rescission was properly disclosed.

1. The Finance Charge Disclosures

In their memorandum in opposition to the motion for summary judgment, the Lahouds acknowledge that "they do not have expert testimony that can rebut the Affidavit [submitted by Countrywide] addressing the accuracy of the finance charge disclosures . . . ." (Dkt. # 90, at 6.) "Because Plaintiff[s] did not oppose Defendant's motion for summary judgment on this claim, summary judgment on the claim [as to the finance charge

amounts] is granted." Bellegar de Bussuau v. Blockbuster, Inc.,
No. 03 Civ. 6614(WHP), 2006 WL 465374, at *7 (S.D.N.Y. Feb. 28,
2006); see also Lewis v. Town of Waterford, No. 3:04CV1194
(DJS)(TPS), 2006 W.L. 2401646, at *2 (D. Conn. Aug. 17,
2006)(summary judgment granted as to a claim deemed abandoned
due to the plaintiff's failure to respond to the defendants'
arguments concerning that claim).

    2.  The Notice of Rescission

    While they acknowledge in their opposition memorandum that
they cannot rebut Countrywide's affidavit regarding the accuracy
of the finance charge disclosures, the Lahouds "assert that
Countrywide committed a more fundamental violation of TILA.
Specifically, the Notice of Right to Cancel that was provided to
them was dated November 24, 2006 and provided that the deadline
to rescind was November 28, 2006 - - the date of the closing."
(Dkt. # 90, at 6.) Prior to addressing the issue of whether the
notice of right to cancel properly disclosed the borrower's
right of rescission, the Court must first determine whether this
claim is properly before the Court.

    The complaint includes the following statement in the
Introduction section: "Countrywide Bank FSB violated the Federal
Truth in Lending Act . . . and the Connecticut Truth-in-Lending
Act . . . by improperly disclosing the finance charges on the
transaction and by improperly disclosing the borrower's right to

cancel the transaction as required by TILA." (Dkt. # 1, at 1, ¶
1.)   In Count One of the complaint, however, the Lahouds allege
that Countrywide violated the federal and Connecticut TILAs "by
failing to properly disclose the amount financed, the finance
charge, and the annual percentage rate as mandated by TILA . . .
." (Id. at 7, ¶ 57.) Count One also alleges that "[t]he
Countrywide loan consummated on or about November 24, 2006 . . .
." (Id. at 7, ¶ 56.) The Facts section of the complaint likewise
refers to "the November 24, 2006 closing . . . ." (Id. at 5, ¶
39.)

   "A claim must be set forth in the pleadings, in order to give
defendants fair notice of the nature of the plaintiff's claim.
Thus, it is inappropriate to raise new claims for the first time
in submissions in opposition to a summary judgment motion."
Thomas v. Egan, 1 F. App'x. 52, 54 (2d Cir. 2001)(citations
omitted); see also Ribis v. Mike Barnard Chevrolet-Cadillac,
Inc., 468 F. Supp. 2d 489, 495 (W.D.N.Y. 2007) ("plaintiff[s]
may not use a memorandum   of law or similar paper to assert a
claim that is not contained in the complaint").

   Fed. R. Civ. P. 8(a)(2) provides that "[a] pleading that
states a claim for relief must contain . . . a short and plain
statement of the claim showing that the pleader is entitled to
relief . . . ."  The statement of the claim is required "in
order to give the defendant fair notice of what the . . . claim

is and the grounds upon which it rests." <u>Bell Atlantic Corp. v.</u>
<u>Twombly</u>, 550 U.S. 544, 555 (2007)(internal quotation marks
omitted). Fair notice of the claim "requires a 'showing,' rather
than a blanket assertion, of entitlement to relief. Without some
factual allegation in the complaint, it is hard to see how a
claimant could satisfy the requirement of providing not only
'fair notice' of the nature of the claim, but also 'grounds' on
which the claim rests." <u>Id.</u> at 556 n. 3. "[A] formulaic
recitation of the elements of a cause of action will not do.
Factual allegations [in the complaint] must be enough to raise a
right to relief above the speculative level . . . ." <u>Id.</u> at 555
(citation omitted).

The Court concludes that as to the claim regarding the notice
of rescission, the complaint does not meet the "plaintiff[s']
obligation to provide the 'grounds' of [their] 'entitle[ment] to
relief' . . . ." <u>Id.</u> The lone statement in the Introduction at
best operates as a label or conclusion.  No 'grounds' or other
facts are provided to put Countrywide on notice of the basis of
a claim regarding the notice of rescission.

The Lahouds maintain that Countrywide was put on notice of
their claim regarding the notice of rescission through their
responses to Countrywide's interrogatories.  The Lahouds rely on
two specific answers to interrogatory questions that they
contend put Countrywide on notice of this new claim.  The first

answer responds to interrogatory 18, which asked for all facts tending to support "the allegations of paragraph 57 of the Complaint that . . . 'Countrywide violated [TILA] by failing to properly disclose the amount financed, the finance charge, and the annual percentage rate . . . .'" (Dkt. # 99, at 15, ¶ 18.) The second answer responds to interrogatory 19, which asked for all facts tending to support "the allegations of paragraph 58 of the Complaint that 'as a result of Countrywide's violations [of TILA], Plaintiffs have an extended right to rescind the Countrywide mortgage loan transaction . . . .'" (Id. at 16, ¶ 19.) As to both of these interrogatories, the Lahouds provided the following answer: "See Answer for Interrogatory Number 10[6]. Additionally, the Notice of Right to Cancel and the Truth in Lending Disclosure were not given to Plaintiffs until November 28, 2006 and the deadline to cancel the transaction was not accurately disclosed. See documents: Lahoud9 and Lahoud10[7]." (Id. at 16, ¶¶ 18, 19.)

The Court finds the Lahouds' contention that they put Countrywide on sufficient notice of this claim by means of their answers to certain interrogatories unavailing. See Lyman v. CSX Transportation, Inc., 364 F. App'x 699, 701-02 (2d Cir. 2010)

---

[6] Interrogatory 10 asked for all facts supporting the claim that Countrywide "'under-stated the Finance Charge by over $2,000 and over-stated the Amount Financed by an equal amount . . . .'" (Dkt. # 99, at 12, ¶ 10.)

[7] The Court finds no other reference to, or identification of, documents "Lahoud9 and Lahoud10" in the record.

(Brief references to new claims in interrogatories insufficient to put defendant on notice.); see also Lytle v. JP Morgan Chase, No. 08 Civ. 9503 (DAB) (JLC), 2012 WL 393008, at *35 (S.D.N.Y. Feb. 8, 2012) ("Because the complaint is intended to provide the defendant with notice of the claims asserted against it, [s]ubsequent filings serve to develop and clarify those issues and assertions, but a party may not assert or develop allegations not contained in the complaint." (internal quotation marks and citations omitted)).

The interrogatory responses cited by the Lahouds fail to identify the statutory violation that is the basis of the new claim and fail to provide the grounds of such a violation. It was also by means of their interrogatory responses that the Lahouds assert that the closing took place on November 28, 2006, and not on November 24, 2006 as alleged in their complaint. (Dkt. # 99, at 10, ¶ 3.) The Lahouds could have sought leave at that point to amend their complaint to include any new claims and correct the factual errors surrounding the closing date but did not do so. It was not until the Lahouds filed their memorandum in opposition to the pending summary judgment motion that Countrywide received fair notice of the nature of the claim, and the grounds on which the claim rests: "[s]pecifically, the Notice of Right to Cancel that was provided to [the Lahouds] was dated November 24, 2006 and provided that

the deadline to rescind the transaction was November 28, 2006 -
- the date of the closing." (Dkt. # 90, at 6.)

Even assuming, arguendo, that the new claim regarding the notice of rescission had been properly raised, the Court finds that the Lahouds' contention would fail as a matter of law. TILA was enacted "to assure a meaningful disclosure of credit terms . . . and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a). In order to help protect consumers, TILA and the regulations implemented by the Federal Reserve Board in 12 C.F.R. 226, known as "Regulation Z," give consumers three business days to rescind a loan that uses their principal dwelling as security. This right can be exercised "until midnight of the third business day following consummation, delivery of the notice required by paragraph (b) of this section [notice of right to rescind], or delivery of all material disclosures, whichever occurs last." 12 C.F.R. § 226.23(a)(3). The notice of the right to rescind must "clearly and conspicuously disclose . . . [t]he date the rescission period expires." 12 C.F.R. § 226.23(b)(1)(v).

"Conspicuousness is a question of law under TILA that, like clarity, is governed by an objective, reasonable person approach." Rivera v. Grossinger Autoplex, Inc., 274 F.3d 1118, 1122 (7th Cir. 2001). The Lahouds cite a number of cases in

17

which various courts have held that the failure to fill in the blank expiration date on a notice of right to rescind violates TILA and requires an extension of the right of rescission. <u>See</u>, <u>e.g.</u>, <u>Williamson v. Lafferty</u>, 698 F. 2d 767 (5th Cir. 1983); <u>New Maine National Bank v. Gendron</u>, 780 F. Supp. 52 (D. Me. 1991).

In this case, however, the expiration date was filled in and was not left blank. Furthermore, as acknowledged by the Lahouds, the form utilized by Countrywide was a model form provided in one of the appendices to Regulation Z and included language in the section entitled "Your Right to Cancel" stating "[y]ou have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:  (1) the date of the transaction, which is 11/24/2006; or (2) the date you received your Truth in Lending disclosures; or (3) the date you received this notice of your right to cancel." (Dkt. # 90-3, at 35.)  The form also included repetitious language in the "How to Cancel" section, which stated "[i]f you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of 11/28/2006 (or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above)." (<u>Id.</u>)  According to the Lahouds, both the 11/24/2006 and the 11/28/2006 dates were

inaccurate, but they were inserted on the form, and the Lahouds both signed the form and dated their signatures "11/24/06."[8]

The Court believes these facts make the present case more akin to Palmer v. Champion Mortgage, 465 F.3d 24 (1st Cir. 2006). In Palmer, which involved a debt-consolidation loan secured by a mortgage, a transaction date of March 28, 2003, which was the date of the closing, was inserted on the required notice of rescission form, but such date was not the date on which the borrower received the notice. The borrower did not leave the closing with a copy of the notice; the notice was subsequently mailed to the borrower and received after April 1, 2003. Id. at 25-26.

The notice form utilized in Palmer featured cancellation language virtually identical to that found in the "Your Right to Cancel" and "How to Cancel" sections of the form received by the Lahouds. Id. at 26. The notice in Palmer included an incorrect deadline for rescission, April 1, 2003, since that date was based on the transaction date and the borrower did not receive the notice until a later date. The First Circuit noted that while the notice did include a statement that rescission had to occur by a specified date that was incorrect, "[t]he statement is followed immediately by a parenthetical reading '(or midnight

---

[8] In his affidavit, Joseph Lahoud states that he and his wife "dated our signatures 'November 24, 2006' at [closing agent] Roland Caserta's instruction, because he said he would otherwise have to re-print all of the documents." (Dkt. # 90-3, at 30, ¶ 7.)

of the third business day following the latest of the three (3) events listed above).' We fail to see how any reasonably alert person - - that is, the average consumer - - reading the Notice would be drawn to the April 1 deadline without also grasping the twice-repeated alternative deadlines." Id. at 28-29.

The only fact that distinguishes Palmer from the current fact pattern is that the listed transaction date in Palmer was technically correct, but was inapplicable because the notice was mailed to the plaintiff at a date after the transaction. Here, the transaction date was actually incorrect. The Court does not find this factual distinction significant for purposes of analyzing this issue.

The Lahouds also draw the Court's attention to Aubin v. Residential Funding Co., LLC, 565 F. Supp. 2d 392 (D. Conn. 2008). In Aubin, the closing on a mortgage refinancing was originally scheduled to take place on February 28, 2006, but actually took place on March 1, 2006. As was the case in Palmer, the notice form utilized in Aubin contained cancellation language virtually identical to that found in the form received by the Lahouds. Id. at 393-94. The notice form received by the borrower in Aubin indicated a transaction date of February 28, 2006, and specified a rescission deadline of March 3, 2006 "(or midnight of the third business day following the latest of the three events listed above)." Id. at 394.

Acknowledging that "clear and conspicuous" notice required by TILA is measured by an objective standard of review, the Court concluded that "[b]ecause of the confluence of rather unique factors presented in this particular case, the Court concludes that the Rescission Notice does not satisfy that standard." Id. at 395-96. Citing Palmer, the Court noted initially that the incorrect expiration date specified in the notice "might well have been rectified or corrected by the alternative three-business-day computational language provided in the Rescission Notice." Id. at 397. In this particular case, however, the Court did not believe the alternative language rectified the incorrect expiration date specified in the notice. First, the Court indicated that the notice did not define the term "business day." This was found to be significant because the TILA definition of a "business day," as opposed to the common understanding of that term, includes Saturdays. Id. "That would not necessarily be fatal to Defendants' defense of the Rescission Notice except for the fact that in this particular case the third business day [after the date of the actual closing, which was also when the borrowers received the rescission notice] was in fact a Saturday." Id. at 398. The Court concluded that under these facts "it is certainly not clear to the average consumer when precisely the three business days following the closing expired," and, for that reason, the

notice did not satisfy the "clear and conspicuous" TILA requirement. Id.

In the present case, the Lahouds contend that the closing took place and they received the rescission notice on November 28, 2006, which was a Tuesday. (Dkt. # 90-3, at 33.) Thus, the third business day after they received the disclosure was a Friday, and the ambiguity found in Aubin due to an intervening Saturday is not found here.  This case does not present the "confluence of rather unique factors" identified by the Court in Aubin. In concluding that the case now under consideration is distinguishable from Aubin and more akin to Palmer, this Court agrees with the sentiment that "[w]here, as here, the Board's form was used and a reasonable borrower cannot have been misled, allowing a windfall and imposing a penalty serves no purpose . . . ." Melfi v. WMC Mortgage Corp., 568 F.3d 309, 313 (1st Cir. 2009)(recognizing that 1995 amendments to TILA "were aimed in general to guard against widespread rescissions for minor violations"). Countrywide's motion is granted as to the TILA claims.

CONCLUSION

For the foregoing reasons, Countrywide's motion for partial summary judgment (**dkt. # 80**) is **GRANTED in part** and **DENIED in part**.

22

The Court GRANTS summary judgment in favor of the defendant Countrywide as to the Fair Credit Reporting Act claim (Count Six of the complaint) and the TILA claims (Count One of the complaint) against Countrywide.

The Court DENIES summary judgment as to the Equal Credit Opportunity Act claim (Count Four of the complaint) against Countrywide.

This leaves the following claims against the defendant Countrywide for trial: (1) fraudulent inducement (Count Two of the complaint); (2) violation of the Connecticut Unfair Trade Practices Act (Count Three of the complaint); and (3) violation of the Equal Credit Opportunity Act (Count Four of the complaint).

SO ORDERED this  30th day of March, 2012

___/s/ DJS_____
            Dominic J. Squatrito
        United States District Judge